# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DEANDRE DUNIGAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 10-1294-JWL** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error as alleged by Plaintiff, the court ORDERS that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.    Background**

Plaintiff applied for SSI on January 3, 2008 alleging disability since February 15, 2005. (R. 9, 115-22). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ). (R. 9, 56-57, 79-

81). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Michael R. Dayton on May 5, 2009. (R. 9, 23). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 9, 23-52).

On December 11, 2009, ALJ Dayton issued a decision finding that although Plaintiff is unable to perform his past relevant work, when considering his age, education, work experience, and residual functional capacity (RFC), "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 17). As relevant to the issues raised in Plaintiff's brief, the ALJ determined that Plaintiff has severe impairments within the meaning of the Act which include a history of gunshot wound to the head, neck spasms, and spasms of the cervical, thoracic, and lumbar spine. (R. 11). He found that Plaintiff also has the medically determinable impairment of anxiety disorder, but that impairment is not severe because it does not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities. Id. The ALJ assessed Plaintiff with the RFC for a range of medium work with certain limitations in pushing and/or pulling, and with certain postural and environmental limitations. (R. 13). He determined Plaintiff is mentally limited to simple unskilled work due to mild sedation from medication. Id. He determined that Plaintiff is unable to perform his past relevant work (R. 16), but that he is able to perform the requirements of representative jobs which exist in significant numbers in the national economy--such as call out operator, or surveillance for a detention center or alarm company. (R. 17-18). Therefore,

he found that Plaintiff was not disabled within the meaning of the Act between the date of his application and the date of the decision, and denied Plaintiff's application. (R.18).

Plaintiff sought, but was denied Appeals Council review of the hearing decision. (R. 1-5, 55). Therefore, the ALJ's decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II. Legal Standard

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)); see also 42 U.S.C. § 1383(c)(3) (a decision made after an SSI hearing "shall be subject to judicial review as provided in section 405(g)"). Section 405(g) of the Act provides that, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at

4

1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses his RFC. 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff alleges three errors in the ALJ's decision. He claims the ALJ erred (1) at step two in finding Plaintiff's anxiety disorder is not severe; (2) in assessing RFC by failing to assess some mental limitation(s) associated with Plaintiff's anxiety disorder; and (3) in finding that the jobs Plaintiff can perform exist in significant numbers. The Commissioner argues that the ALJ properly evaluated the severity of Plaintiff's anxiety,

5

and properly found jobs that Plaintiff can perform existing in significant numbers in the national economy. The court finds no error in the ALJ's decision.

## III.     Step Two Evaluation

Plaintiff claims the ALJ erred at step two in finding Plaintiff's anxiety disorder is not severe. He argues that the lack of treatment does not preclude an impairment from imposing at least <u>de minimis</u> functional limitations; and that Dr. Schwartz, the consultative psychologist, found Plaintiff's impairment interfered with his functioning and assigned a GAF[1] score of 50. The Commissioner argues that the ALJ properly evaluated the severity of Plaintiff's anxiety disorder. He argues that Plaintiff never received psychiatric treatment for this impairment, and there is no evidence of work-related limitations assigned as a result of the impairment. He acknowledges that Plaintiff has been prescribed medication for anxiety, but argues that such conservative treatment does not suggest a severe impairment within the meaning of the Act and regulations. The

---

[1]A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR) 32 (4th ed. text revision 2000). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). <u>Id.</u> at 34. GAF is a classification system providing objective evidence of a degree of mental impairment. <u>Birnell v. Apfel</u>, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing <u>Schmidt v. Callahan</u>, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

A GAF score in the range from 41 to 50 indicates "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV-TR, at 34 (emphasis in original).

Commissioner acknowledges Plaintiff's arguments regarding Dr. Schwartz's report; but argues that a GAF score of 50 does not require finding a severe impairment, that Dr. Schwartz found Plaintiff's impairment would not preclude work-related activities, and that the ALJ relied upon the opinion of the state agency consultants who reviewed Dr. Schwartz's report and opined that Plaintiff's anxiety disorder is not severe.

### A. The ALJ's Step-Two Determination Regarding Anxiety Disorder

The ALJ recognized Plaintiff has a medically determinable anxiety disorder, but he found the impairment not severe in this case. (R. 11). In doing so, he considered and assessed Dr. Schwartz's psychological evaluation and the Psychiatric Review Technique Form (PRTF) prepared by the state agency consultant, Dr. Blum:

> During a psychological evaluation on June 3, 2008, with Michael H. Schwartz, Ph.D., the claimant denied any inpatient or outpatient psychiatric treatment, nor taking any psychotropic medications. Dr. Schwartz stated that the claimant's form and flow of thought was logical and to the point. Dr. Schwartz noticed some hypervigilance, anxiety, and a phobic disorder focusing on his being attacked, however, he believed that the claimant could remember work location and procedures and understand and follow simple directions. Dr. Schwartz gave the claimant a global assessment of functioning (GAF) score of 50. The DSM-IV, American Psychiatric Association, states that a global assessment of functioning (GAF) ranging from 41 to 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning such as no friends or inability to keep a job, however, Dr. Schwartz stated that although the claimant might have some fears about being away from the house, he did not believe that his hypervigilance and anxiety would necessarily prevent him from working (exhibit B3F [(R. 254-56)]). Furthermore, a state agency medical consultant, Robert H. Blum, Ph.D. reviewed the psychological evaluation report from Dr. Schwartz and found that the objective evidence did not indicate a severe disorder (exhibit B5F [(R. 258-71)]).

(R. 11-12).

The ALJ noted that he had considered the Commissioner's psychiatric review technique and applied it in determining the severity of Plaintiff's mental impairment. Id. at 12. He considered the four broad functional areas presented in the technique and found that Plaintiff has mild limitation in activities of daily living, mild limitation in social functioning, mild limitation in concentration, persistence, or pace, and no episodes of decompensation. Id. Based upon these findings, and relying upon the dictates of 20 C.F.R. § 416.920a(d)(1), the ALJ found that Plaintiff's anxiety disorder is not severe. Id.

### B. The Applicable Standard

An impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic work activities such as understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities. Williams, 844 F.2d at 751. However, he must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work

activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

The Commissioner has promulgated a psychiatric review technique for evaluating mental impairments. 20 C.F.R. § 416.920a. In evaluating the severity of mental impairments at steps two, the technique provides for rating the degree of functional limitation in each of four broad mental functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. § 416.920a(c). After rating the degree of limitation in each area, the Commissioner determines the severity of plaintiff's mental impairments. Id. § 416.920a(d).

When the first three functional areas are rated as either "none" or "mild," and the fourth area is rated as "none," the agency will conclude at step two of the sequential evaluation process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities." Id. § 416.920a(d)(1).

### **C.** **Analysis**

As the court's discussion above reveals, the ALJ applied the correct legal standard to his step two evaluation of the severity of Plaintiff's mental impairment--anxiety disorder. And, substantial evidence supports his evaluation. As the parties agree, Dr. Schwartz stated that Plaintiff "is hypervigilant and has developed anxiety and a phobic disorder focusing on his being attacked." (R. 255). He noted, "This does interfere with

9

his functioning." Id. However, Dr. Schwartz also discussed Plaintiff's "Potential of Competitive Employment," and stated:

> I believe he could remember work location and procedures and understand and follow simple directions. I believe he has adequate attention, concentration, and short-term memory. Although he may have some fears about being away from the house and I believe it may be difficult for him, I do not believe his hypervigilance and anxiety would necessarily prevent his working.

Id. Finally, as the ALJ noted, Dr. Blum specifically considered Dr. Schwartz's mental status exam which took place on June 3, 2008, and stated, "The objective evidence did not indicate a severe disorder" (R. 270), and concluded that Plaintiff's mental impairment(s) are not severe. (R. 258). As the ALJ explained, this evidence supports his finding that Plaintiff's mental impairment is not severe. Moreover, he applied the psychiatric review technique to reach his ultimate conclusion.

Plaintiff's arguments--that the lack of treatment does not preclude an impairment from imposing at least de minimis functional limitations, that Dr. Schwartz found the impairment interfered with Plaintiff's functioning, and that Dr Schwartz assigned a GAF score of 50--do not require finding that Plaintiff's anxiety is a severe impairment. Plaintiff is correct that conservative treatment for anxiety, such as medication with no further psychiatric treatment does not preclude a finding of a severe impairment, but he does not point to evidence in this record which compels finding anxiety is severe in this case. Moreover, contrary to the suggestion of Plaintiff's brief, the ALJ did not rely upon conservative treatment or a lack of treatment to find that Plaintiff's mental impairment is
10

not severe, or that no mental limitations are necessary. Rather, as quoted at pp. 7-8 above the ALJ summarized Dr. Schwartz's report that Plaintiff denied inpatient or outpatient psychiatric treatment and denied taking psychotropic medication. (R. 11). The decision reveals the bases for the ALJ's finding regarding the severity of the Plaintiff's mental impairment were the facts that: (1) Dr. Schwartz opined Plaintiff would be able to work, (2) Dr. Blum reviewed Dr. Schwartz's report and found the impairment was not severe, and (3) application of the psychiatric review technique revealed the impairment was not severe. (R. 12). The amount of treatment did not enter into it. The ultimate basis for the ALJ's finding was application of the psychiatric review technique as stated, "Because the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere." Id.

Although Dr. Schwartz found Plaintiff's hypervigilance, anxiety, and phobic disorder affect his functioning, he also noted that they would not prevent his working. The ALJ recognized these findings of Dr. Schwartz and explained his determination in light of them and of the remaining record evidence. Plaintiff has not shown any error in the ALJ's rationale. Finally, Plaintiff has not shown that a GAF score of 50 necessitates finding a severe impairment. Serious symptoms or any serious impairment in social, occupational, or school functioning as indicated by Dr. Schwartz's GAF score of 50 does not require finding more than a minimal effect on Plaintiff's ability to do basic work activities because a score of 50 may reflect problems in social functioning or symptoms

11

not related to the ability to perform basic work activities. Eden v. Barnhart, 109 Fed. App'x 311, 314 (10th Cir. 2004) (GAF score of 50 may not relate to an ability to perform basic work activities).

Plaintiff is correct to argue that based upon the record evidence (especially Dr. Schwartz's report) an ALJ might have concluded that Plaintiff's anxiety has more than a minimal effect on the ability to perform basic work activities. However, he has not shown that the evidence compels that finding. Moreover, as the court discussed above, the ALJ explained his finding, and substantial evidence in the record supports that finding. As the Tenth Circuit noted in Lax v. Astrue, "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). The ALJ did not err in finding Plaintiff's mental impairment not severe.

## IV. Assessment of Mental Limitations

Plaintiff next argues that even if his mental impairment is not severe, that does not mean that it produces no limitations in relevant work-related functions, and he suggests that the ALJ should have found some limitation in Plaintiff's ability to interact appropriately with the public, co-workers, and supervisors. (Pl. Br. 6) (citing Grotendorst

v. Astrue, 370 F. App'x 879, 883-84 (10th Cir. 2010)). He argues that the record evidence--including his testimony and reports, and Dr. Schwartz's report--supports a finding of mental limitations in the ability to appropriately interact with the public, co-workers, and supervisors, and the ALJ should have included a limitation to only occasional contact with the public and co-workers in the RFC assessed. (Pl. Br. 7-8). The Commissioner argues that there is no treating source evidence suggesting work-related limitations.

As discussed above, in his step two analysis the ALJ discussed the evidence relating to Plaintiff's mental impairment, including Dr. Schwartz's report and Dr. Blum's PRTF. Dr. Blum suggested no limitations in work-related mental abilities, and although Dr. Schwartz noted that Plaintiff "may have some fears about being away from the house and I believe it may be difficult for him" (R. 255) (emphasis added), he did not believe it would preclude work, and he, also, suggested no limitations in work-related mental abilities. Plaintiff cites to his own testimony and his reports to the Social Security Administration that he is paranoid and irritable, and prefers isolation. (Pl. Br. 7). However, this evidence, even if it is accepted, does not establish that Plaintiff must have limitations in his work-related contacts with the public, co-workers, and supervisors. Moreover, the ALJ considered Plaintiff's testimony and his reports of symptoms and found them "not credible to the extent they are inconsistent with" the RFC assessed. (R. 14). Plaintiff does not allege that the ALJ's credibility finding is erroneous.

Plaintiff's appeal to Grotendorst does not require finding mental limitations in the circumstances of this case. As Plaintiff argues, in Grotendorst as here, "the ALJ found Plaintiff's mental impairment was not severe and constructed an RFC assessment devoid of any mental limitations." (Pl. Br. 6) (citing 370 F. App'x at 883-84). The Grotendorst court noted that the ALJ had not applied the psychiatric review technique. It stated:

> Here, the ALJ concluded that Ms. Grotendorst's anxiety and depression were not severe without first making the required findings regarding how limited she was in each of the four broad functional areas. Instead, the ALJ held that Ms. Grotendorst's anxiety and depression were not severe because there was "no objective medical evidence . . . that [she] ha[d] been treated for anxiety or depression at any time during the relevant period under consideration."

370 F. App'x at 882 (ellipsis and brackets in original).

The court found two errors in the ALJ's finding: (1) The ALJ had misstated the record because, contrary to the ALJ's finding, there was record evidence that two doctors had diagnosed and provided treatment for anxiety disorder, and (2) "the regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of treatment received by a claimant does not play a role in that determination." Grotendorst, 370 F. App'x at 882-83. Neither of those errors is present here. The ALJ here has not misstated the record with regard to the severity of Mr. Dunigan's anxiety disorder, he properly applied the psychiatric review technique to determine the severity of Plaintiff's impairment, and he did not rely upon consideration of the amount of treatment in his severity determination.

The court next turned its attention to Ms. Grotendorst's claim that the ALJ failed to include a mental limitation in the RFC assessed. Id. at 883. The court noted that two agency physicians found Ms. Grotendorst moderately limited as a result of her mental impairments in her ability to maintain attention and concentration for extended periods. Id. The court found error because "despite record evidence of limitations due to mental impairments, the ALJ failed to either include those limitations in her RFC determination . . ., or explain that failure." Id. at 884. Here, as discussed above, the ALJ summarized all of the relevant evidence, and explained how he arrived at the mental severity findings. The errors addressed in Grotendorst simply are not present here.

## V.     Step Five Finding - A Significant Number of Jobs in the National Economy

In his final argument, Plaintiff claims the ALJ erred in finding a significant number of jobs is available to Plaintiff based upon work as a surveillance monitor or as a call-out operator which only include thirty-five jobs in western Kansas and 1,100 jobs throughout the state. (Pl. Br. 9-10) (citing Trimiar v. Sullivan, 966 F.2d 1326, 1330 n.10, 1332 (10th Cir. 1992) (accepting 650 to 900 jobs in the state of Oklahoma as sufficient, and refusing "to interpose our judgment for that of the ALJ"); Goff v. Chater, Civ. A. No. 93-1208-FGT, 1995 WL 580090 *10 (D. Kan. Aug. 8, 1995) (5,000 jobs in the state sufficient); Case v. Chater, C.A. No. 93-1187-FGT, 1995 WL 311738 *6 (D. Kan. May 11, 1995) (500 jobs in the state sufficient)). The Commissioner argues that the ALJ properly found the jobs suggested by the vocational expert represent a significant number of jobs in the economy. He notes that the occupations at issue include 1,100 jobs in the

15

state and 155,000 jobs in the national economy, and argues that Plaintiff's narrow focus on the regional availability of jobs is incorrect because the relevant statutes, regulations, and case law require a focus on jobs in the national, not regional, economy. (Comm'r Br. 10) (citing Raymond v. Astrue, 621 F.3d 1269, 1274 (10th Cir. 2009)).

The court agrees with the Commissioner. As Plaintiff argues, the Trimiar court held that the evaluation of a significant number of jobs "should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." (Pl. Br. 9) (quoting Trimiar, 966 F.2d at 1330). That is what the ALJ did here. He inquired regarding the qualifications of the vocational expert and determined that Plaintiff had no objections regarding her qualifications. (R. 46). He assessed RFC in accordance with the regulations, and provided that RFC to the expert in a hypothetical question, and secured her testimony regarding the two occupations available, and the number of jobs in those occupations in the region, the state, and the national economy. (R. 49-50).

Plaintiff makes much of the fact that those occupations provide only thirty-five jobs in western Kansas, and 1,100 jobs in the state. However, as the Commissioner argues, the proper focus is on the national economy, and Plaintiff admits that those occupations comprise 155,000 jobs nationally. As the Commissioner cites, the Tenth Circuit in Raymond discussed this very issue and explained that:

> the controlling statutes, federal regulations, and case law all indicate that
> the proper focus generally must be on jobs in the national, not regional,
> economy. In 42 U.S.C. § 423(d)(2)(A), for example, Congress prescribed

16

> that "[a]n individual shall be determined to be under a disability only if ... [he cannot] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area.... '[w]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id. (emphasis added); see also 20 C.F.R. § 416.966(c) ("We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy."); Jensen v. Barnhart, 436 F.3d 1163, 1168 (10th Cir. 2005) ("The Commissioner met her step-five burden of proving that there are sufficient jobs in the national economy for a hypothetical person with Jensen's impairments." (emphasis added)); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005) (noting that the claimant must show his impairments prevent him from performing his past work, and then the burden shifts to the Commissioner to show that the claimant can perform work in the national economy); Hamlin v. Barnhart, 365 F.3d 1208, 1224 (10th Cir. 2004) (noting that jobs need only exist within "the regional or national economy" (emphasis added)).

Raymond, 621 F.3d at 1274.

Moreover, the court notes that the number of jobs available in Kansas exceed the numbers found to be sufficient in two of the very cases cited by Plaintiff. Trimiar, 966 F.2d at 1330 n.10, 1332 (accepting 650 to 900 jobs in the state of Oklahoma as sufficient); Case, 1995 WL 311738 *6 (500 jobs in the state sufficient). Plaintiff has shown no error in the ALJ's finding that a significant number of jobs exist in the national economy.

The court has considered each of Plaintiff's allegations of error and find no error in the ALJ's decision.

17

**IT IS THEREFORE ORDERED** that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 27th day of June 2011, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**